# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| LESLIE BLANKENSHIP, | |
| Plaintiff, | Court File No. _____ |
| v. | |
| 3M COMPANY;<br>AEARO TECHNOLOGIES LLC; | **COMPLAINT AND DEMAND FOR JURY TRIAL** |
| Defendants. | |

Plaintiff, LESLIE BLANKENSHIP, brings this Complaint against Defendants 3M Company and Aearo Technologies LLC ("Defendants") for injuries caused by Defendants' design, development, testing, assembling, manufacturing, packaging, promoting, marketing, distribution, supplying and/or selling defective respirators.

## **PARTIES**

1. Plaintiff is a citizen and resident of Virginia.

2. Defendant 3M is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business located in Maplewood, Minnesota. 3M is engaged in the business of researching, developing, designing, licensing, manufacturing, distributing, supplying, selling, marketing and introducing into interstate commerce, either directly or indirectly through third parties or related entities, its products, including filtering facepiece respirators.

3. Defendant Aearo Technologies LLC is a foreign limited liability company organized under the laws of Delaware with its principal place of business at 3M Center Bldg 224-5N-40, St. Paul, Minnesota 55144. Aearo Technologies was engaged in the business of researching, developing, designing, licensing, manufacturing, distributing, supplying, selling, marketing and introducing into interstate commerce, either directly or indirectly through third parties or related entities, its products, including the single cartridge 2090 type facepiece respirator.

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 insofar as the parties are citizens of different states and the amount in controversy in this matter exceeds Seventy-Five Thousand Dollars ($75,000), exclusive of interest and costs.

5. Venue is proper in this jurisdiction pursuant to 28 U.S.C. § 1391 because Defendants 3M Company and Aearo Technologies reside in the State of Minnesota and this judicial district. Further a substantial number of the events, actions, or omissions giving rise to the Plaintiff's claims occurred in this district.

## FACTUAL ALLEGATIONS

6. The Defendants, directly, or through their agents, apparent agents, servants, or employees, designed, manufactured, marketed, advertised, distributed and sold respirators which the Plaintiff used for protection from occupational dusts including coal dust and silica.

7. Plaintiff worked as a coal miner from approximately February 1994 until July 2017 the following locations and positions (the dates of employment are approximate):

a. Lowe Mining (Buchanan County, VA) – February 1994 until January 1996 – general inside work

b. Woodman 3 (Buchanan County, VA for 6 months and Pike County, KY for rest of time) – July 1996 to January 1998 – general inside work, some roof bolting and some miner operating

c. Falcon (Buchanan County, VA) – for approximately 8 months in 1998 – miner operator

d. Knox Creek Coal/Massey Energy (Tiller No. 1)(Tazewell County, VA) – February 1999 until December 2015 – miner operator, shuttle car operator, roof bolter, and section foreman

e. Revelation Energy (D-17) (Buchanan County, VA) – August 2016 until July 2017 – Section foreman.

8. From approximately 1994 until 2011 while actively working in dust, the Plaintiff used either a 3M filtering facepiece respirator (8710 or 8210) or a 2090 type respirator manufactured by Cabot and then Aearo Technologies.

9. 3M Company manufactured, marketed, and sold the 3M 8710 from 1972 until the mid-1990's. The 8710 was the first NIOSH approved single use filtering facepiece respirator. The 8710 was replaced by the 3M 8210 which is still sold today. 3M sold other similar disposable filtering facepiece respirators with essentially the same design. The 8710, 8210, and other 3M filtering facepiece respirators are inferior to the products they were designed to compete against, elastomeric respirators which had been the industry standard for decades prior to 1972. 3M knew of many design defects in the filtering facepiece respirators throughout their existence including, but not limited to: lack of exhalation and inhalation valves; lack of foam face seal; lack of adjustable straps; metal nose piece would relax after fitting; inability to perform a fit test until some after 1982;

3

inability to perform a fit check/user seal check; inability to obtain a proper face seal; filter media was defective; failure to comply with NIOSH testing standards; and other ways to be proven through the litigation of this case.

10. Further, 3M made false and/or misleading statements to NIOSH regarding 3M's testing of respirators which voided 3M's NIOSH approval. The 8710 was unable to pass 3M's quality control tests and this information was never given to NIOSH which also voided the certification of the 8710. The 8710 could not meet the breathing resistance requirements of the federal regulations. 3M was aware of these defects and failed to correct the defects and/or inform users of these known defects. The defects present in the filtering facepiece respirators resulted in Plaintiff being exposed to occupational dusts including respirable coal and silica and was the cause of his occupational lung injury. Due to the defective nature of the 3M filtering facepiece respirators, the Plaintiff was unknowingly exposed to harmful dust resulting in him being diagnosed with complicated coal worker's pneumoconiosis (CWP).

11. The 2090 type respirator was manufactured by Cabot from sometime in 1990 until Aearo took over the manufacturer in the mid 1990's. Aearo continued to manufacture and sell the respirator through at least 2011. The Cabot and Aearo 2090 type respirators were unreasonably dangerous in the following non-exclusive manners: unknowingly leaked; would not adequately seal to face; the two-point strap system was defective; would not properly filter deadly dusts; filters would lose efficiency in high humidity conditions; and other defective designs to be proven through the litigation of this case. Due to the

defective nature of the 2090 type respirators the Plaintiff was unknowingly exposed to harmful dust resulting in him being diagnosed with complicated CWP.

## STATUTE OF LIMITATIONS

12. It is well documented that exposure to coal and silica dust can cause coal worker's pneumoconiosis. Plaintiff was exposed to respirable coal and silica dust at the above described jobs. 3M's and Aearo's respirators failed to provide adequate and sufficient protection to Plaintiff due to the defective design of said respirators. It is also well documented that CWP is a latent disease that develops years after the first exposure. There is no cure for CWP and it can be a progressive disease. Plaintiff was not informed of changes in his lung consistent with CWP until sometime after May 2016. Plaintiff was not aware that the respirators were a potential contributing cause to his complicated CWP until on or after April 2018.

13. Statutes of Limitations are considered procedural rather than substantive. The law of the forum where the Federal Court sits governs procedural matters, and therefore, Minnesota's statute of limitations would apply to this action. With this claim being brought within four years of Plaintiff's knowledge of his injury and within 2 years of his knowledge of the defective nature of the respirators, Plaintiff's claim is timely.

## PLAINTIFF'S SPECIFIC EXPERIENCE

14. As a result of the defective design of the respirators, Plaintiff has suffered and will continue to suffer severe and permanent personal injuries.

15. Plaintiff used the 3M and Aearo respirators throughout his coal mining career for protection against occupational dusts including coal and silica.

16. The defective design of 3M and Aearo's respirators caused him to be unknowingly exposed to the occupational dusts present in the coal mines.

17. Plaintiff now suffers and will continue to suffer from permanent damages as a result of the defective condition of the respirators he used.

18. 3M and Aearo concealed and continue to conceal their knowledge of the respirators' unreasonably dangerous risks from Plaintiff, employers, and other consumers.

19. 3M and Aearo failed to conduct adequate and sufficient post-marketing surveillance after they began marketing, advertising, distributing and selling the respirators.

20. As a result of 3M's and Aearo's actions and inactions, Plaintiff was injured due to the use of the respirators, which has caused and will continue to cause Plaintiff's various injuries and damages. Accordingly, Plaintiff seeks compensatory damages.

## CAUSES OF ACTION

### COUNT I
### STRICT LIABILITY UNDER VIRGINIA LAW

21. Plaintiff hereby incorporates by reference all preceding paragraphs as if fully set forth herein.

22. At all material times, 3M and Aearo were engaged in the business of manufacturing, distributing, supplying, and/or marketing respirators intended to protect users of those respirators, including Plaintiff, from silica and other hazardous respirable dust.

23. 3M and Aearo respirators were used by Plaintiff in order to protect Plaintiff from inhalation of coal, silica, and other hazardous respirable dust.

24. 3M and Aearo respirators failed to protect Plaintiff from inhaling coal, silica, and other hazardous respirable dust thereby directly causing or contributing to cause Plaintiff damage in that he contracted complicated CWP through the inhalation of respirable coal, silica, and other hazardous respirable dust.

25. 3M and Aearo respirators were in a defective condition and unreasonably dangerous for use in the expectable environment of use of said respirators when placed in the stream of commerce by 3M and Aearo. Said defective and unreasonably dangerous condition caused or was a contributing cause of the injuries and damages which are the basis of this suit.

26. 3M and Aearo are liable to Plaintiff because as designer, manufacturer, distributor, and/or seller of their products in a defective, unreasonably dangerous condition, 3M and Aearo owed Plaintiff a strict duty not to cause harm through the use of their defective and unreasonably dangerous products.

27. Further, 3M and Aearo sold and placed in the stream of commerce defective and unreasonably dangerous respirators which were not safe for their reasonably anticipated use when 3M and Aearo:

(a) knew, or with the exercise of reasonable care should have known, that their respirators would not protect against coal, silica, and other hazardous dust, and, therefore, the respirators were in a defective, unreasonably dangerous condition;

(b) failed to warn and/or adequately warn Plaintiff of such dangers that were

(a) posed by the 3M and Aearo defective and unreasonably dangerous respirators;

(c) knew or it was reasonably foreseeable, that the 3M and Aearo respirators would be used by users or consumers such as Plaintiff, in the manner in which the 3M and Aearo respirators were used by Plaintiff;

(d) failed to instruct Plaintiff in the proper use of the 3M and Aearo respirators to protect Plaintiff from harm, if, in truth, there was a way that the 3M and Aearo respirators could protect Plaintiff from such harm;

(e) knew, or with the exercise of reasonable care should have known, that the 3M and Aearo respirators were designed in a manner where the respirators did not properly fit and could not be fitted properly to Plaintiff in the circumstances and under the conditions in which Plaintiff used the respirators;

(f) knew, or with the exercise of reasonable care, should have known that the 3M and Aearo respirators were ineffective in repelling coal and silica dust and that when Plaintiff used the 3M and Aearo respirators in a manner which 3M and Aearo intended for the products to be used, Plaintiff was still exposed to dangerous coal and silica particles;

(g) knew, or with the exercise of reasonable care should have known, that the 3M and Aearo respirators contained a filter which was not adequate to repel coal, silica, or other hazardous dust, or to prevent Plaintiff from breathing coal, silica, or other hazardous dust.

28. The aforestated conduct of 3M and Aearo was done with conscious disregard for the safety of Plaintiff, Leslie Blankenship, and others, justifying an award of punitive damages.

## COUNT II
## BREACH OF WARRANTY
## UNDER VIRGINIA LAW

29. Plaintiff hereby incorporates by reference all preceding paragraphs as if fully set forth herein.

30. At all material times, 3M and Aearo were merchants who sold respirators and as such, 3M and Aearo impliedly warranted that said respirators were fit for a particular purpose, would be safe and not unreasonably dangerous for use by the general public, and 3M and Aearo also warranted that said respirators would be merchantable. At all material times, 3M and Aearo expressly warranted with respect to the 8710/8210 and R20N95 respirators used by Plaintiff during the term of his aforesaid employment, that these respirators would provide proper filtration of coal and silica dust. 3M and Aearo breached this express warranty because each of these respirators were dangerous and unsafe for the users thereof in a coal, silica, and hazardous mixed dust environment, including Plaintiff. 3M and Aearo breached the implied warranty of fitness for a particular purpose aforesaid and of merchantability aforesaid and said breaches caused or were the contributing causes of Plaintiff's complicated CWP.

31. At all material times 3M expressly warranted with respect to the 3M respirators used by Plaintiff during the term of his employment aforesaid, that "one size fits all faces", "one size fits most faces", and that the 3M 8710 and 8210, NIOSH certified respirators were approved to be used in coal, silica, and other hazardous dust environments and could protect the user in those environments, and 3M Company breached its express warranty aforesaid because the respirators were dangerous and unsafe for the users thereof, including Plaintiff

32. 3M and Aearo knew or should have known that their respirators would be purchased and used in environments containing coal, silica, and other hazardous dust particles. Further, 3M and Aearo knew or should have known that their respirators would

9

be purchased and used as a means of protecting Plaintiff from inhaling coal, silica, and other hazardous dust particles.

33. Plaintiff reasonably relied on 3M's and Aearo's judgment that the respirators were fit for use in Plaintiff's work environment.

34. The 3M and Aearo respirators were not fit for use in Plaintiff's work environment because the respirators failed to protect Plaintiff from inhaling silica and other hazardous dust.

35. As a direct result of the 3M and Aearo respirators being unfit for use in Plaintiff's work environment, Plaintiff was damaged in that he suffers from complicated CWP.

## COUNT III
## NEGLIGENCE UNDER VIRGINIA LAW
## 3M AND AEARO

36. Plaintiff hereby incorporates by reference all preceding paragraphs as if fully set forth herein.

37. 3M and Aearo knew, or in the exercise of ordinary care, should have known of unreasonable risks of harm posed by use of their respirators.

38. Despite their actual or constructive knowledge that their respirators pose an unreasonable risk of harm, 3M and Aearo:

(a) failed to provide adequate warning and/or instruction with regard to the respirators;

(b) failed to provide proper fitting instructions;

(c) either ignored the results of filtering and quality control tests performed by

3M, Aearo, and others, or failed to perform adequate filtering tests on said respirators before they were placed in the stream of commerce;

(d) failed to properly design their respirators;

(e) failed to adequately monitor and/or test or prescribe monitoring and/or tests for persons who handled or worked with their respirators;

(f) failed to accompany their respirators with adequate warnings of their dangerous propensities;

(g) knew, or with the exercise of reasonable care, should have known that 3M's and Aearo's respirators contained a filter which was not adequate to repel coal or silica dust or prevent Plaintiff from breathing coal or silica dust;

(h) failed to implement or enforce a valid quality control program to ensure that 3M and Aearo respirators were manufactured in compliance with federal certification regulations;

(i) failed to manufacture a respirator which complied with federal certification regulations causing the respirator to have defects resulting in failure to a degree that the respirator does not provide any respiratory protection and that the defects reduced protection and is not detectable by the user.

39. The acts and/or omissions by 3M and Aearo directly caused or directly contributed to cause Plaintiff's complicated CWP and damages as set forth herein. 3M's and Aearo's aforestated conduct was done with conscious disregard for the safety of Plaintiff and others, justifying an award of punitive damages.

## COUNT IV
## NEGLIGENCE PER SE – 3M AND AEARO

40. Plaintiff hereby incorporates all preceding paragraphs as if fully set forth herein.

41. Plaintiff would also plead negligence *per se* and show that the Defendant 3M Company violated the following provisions of federal law and federal regulations: 1) 30

U.S.C. § 820 (f) & (h) by falsely representing that the 3M 8710 and 8210 were in compliance with federal certification regulations when the respirator failed to comply with these regulations, 2) 30 C.F.R. part 11, including sections 11.33, 11.40, 11.41, 11.42, 11.43, 11.140-4, 11.140-5 and 11.140-9. Plaintiff would further show that these laws and regulations were intended to protect the class of persons working in mining and/or silica dust producing operations and that Plaintiff is within this class of persons. Accordingly, the Defendant 3M is liable under the doctrine of negligence *per se*.

42. Plaintiff would also plead negligence *per se* and show that the Defendant Aearo violated the following provisions of federal law and federal regulations: (1) 30 U.S.C. § 820 (f) & (h) by falsely representing that the R20N95 respirator was in compliance with federal certification regulations when the respirator failed to comply with these regulations; and (2) 30 C.F.R. part 11, including sections 11.140-10. Plaintiff would further show that these laws and regulations were intended to protect the class of persons working in mining and/or silica dust producing operations and that Plaintiff is within this class of persons. Accordingly, Aearo is liable under the doctrine of negligence *per se*.

### COUNT V
### MISREPRESENTATION 402B – 3M COMPANY

43. Plaintiff hereby incorporates all preceding paragraphs as if fully set forth herein.

44. The evidence will further show that 3M misrepresented to workers like Plaintiff that the 3M 8710 and 8210 had certain performance capabilities which they did not. 3M represented that the 8710 and 8210 could be used in work areas with coal and

silica dust concentrations when they could not, in fact, protect workers from coal and silica. 3M represented that the 8710 and 8210 would filter out coal and silica particles, and protect the user when, in fact, they could not. These misrepresentations were a producing cause of the Plaintiff's injures and damages. The Plaintiff, and/or his employer, relied upon the representations made by the Defendant 3M in purchasing the 8710 and 8210. This reliance caused Plaintiff to utilize the 8710 and 8210 when he would not otherwise have used these respirators and proximately caused Plaintiff's injuries and damages.

## COUNT VI
## FRAUD – 3M COMPANY

45. Plaintiff hereby incorporates all preceding paragraphs as if fully set forth herein.

46. The evidence will show further that from 3M knowingly made representations that the 3M 8710 and 8210 were approved by the National Institute for Occupational Safety and Health ("NIOSH") and met the approval requirements pursuant to the statutory requirements embodied in 84 CFR part 42 of Federal Regulations. The evidence will show that despite making these representations and including such representations on all packaging and marketing literature, the evidence will show that this representation was untrue. The evidence will further show that the 3M 8710 and 8210 failed to meet NIOSH certification requirements and specifications. The respirators were sold to the public with full knowledge by 3M that the respirators could not and did not meet the NIOSH approval regulations. Such conduct constituted false representations and concealments with the intent to induce Plaintiff's employer into purchasing the 3M 8710

and 8210.

47. The evidence will also show that the representations set forth in the preceding paragraphs concerned material facts, because the Plaintiff's employers would not have endeavored to purchase the 3M 8710 and 8210 if the Plaintiff's employers had known that the respirators did not meet or exceed government certification requirements. This representation was relied upon by Plaintiff's employers resulting in substantial injuries and damages to Plaintiff. In this connection, Plaintiff further alleges that the Defendant 3M purported to have and did have superior knowledge concerning the subject matter of the transaction described above, and Plaintiff and his employers justifiably relied on Defendant's superior knowledge. The above foregoing action taken by 3M constitute fraud which proximately caused Plaintiff's injuries and damages

48. 3M's aforestated conduct was done with conscious disregard for the safety of Plaintiff and others, justifying an award of punitive damages

## COUNT VII
## EXEMPLARY/PUNITIVE DAMAGES – 3M AND AEARO

49. Plaintiff hereby incorporates by reference all preceding paragraphs as if fully set forth herein.

50. In performing the acts described herein the Defendants, 3M Company and Aearo acted maliciously, willfully, intentionally, recklessly and in wanton and willful disregard of Plaintiff's safety. Accordingly, Plaintiff is entitled to punitive and/or exemplary damages.

51. The evidence will show that the 3M 8710 and 8210 were never designed nor

capable of meeting the legal requirements for use around any operation where workers were exposed to pneumoconiosis producing dusts. More specifically, this respirator/dust mask was never capable of complying with the requirements of the Occupational Safety Health Act C.F.R. 1910.134(f) & (g) because a face-piece-to-face fit was impossible to perform on this design of respirator/dust mask. Despite the fact that this face-piece-to-face fit check was required pursuant to the aforementioned regulation, the Defendant sold and marketed these respirators/dust masks knowing that this respirator/dust mask could not comply with the fit check and fit test requirements under 29 C.F.R. 1910.134(f) & (g). Knowing that this respirator/dust mask could not comply with the OSHA regulations, the Defendant, 3M Company, intentionally and knowingly refused to inform purchasers of this equipment that the respirator/dust mask could not comply with 29 CF.R. 1910.134(f) & (g). The Defendant refused to inform purchasers that the American National Standards Institute, a national consensus organization of manufacturers and safety experts, had declared that testing the fit of these type of respirators/dust masks to the face with a proper face seal was "impossible" to perform. Despite the declaration from this well respected and nationally recognized organization to which the Defendant belonged, the Defendant continued to sell the respirator/dust mask knowing that it could not be tested for fit and it could not comply with federal law. Furthermore, Federal regulations also required that a fit test be periodically performed on the respirator to determine proper fit. This fit test required that the mask be tested in a test atmosphere. However, no such suitable test agent was available for the respirators therefore making it impossible for employers to comply with the fit test requirement required by 29 C.F.R. §1910.134(e)(5).

52. Such inability to test the fit of the disposable respirator/dust mask pursuant to the requirements of 29 C.F.R. § 1910.134 (e)(5) made the product unreasonably dangerous yet the Defendant continued to sell the product knowing that it created an unreasonable danger and could not comply with the requirements of this regulation. This failure to disclose was intentional and willful and carried out by vice principals of the Defendant responsible for the sale and design of the respirator/dust mask because disclosure of such information would have resulted in the inability to sell respirators/dust masks to the public for the use which they were intended. Therefore, the Defendant knowingly, intentionally and willfully continued to sell the respirator/dust mask in a dangerous condition knowing that it was unreasonably dangerous and unsafe. The Defendant continued to do so with ill will in order to continue the sale of the product and preserve the Defendant's market share of the product, which it otherwise would have been unable to sell. Such conduct warrants the imposition of punitive and/or exemplary damages pursuant to Virginia law.

53. The evidence will show Aearo had actual knowledge that the type of respirators used by Plaintiff substantially leaked harmful, undetectable dust into the breathing zone of the wearer, when used in conditions commonly found in coal mining. Further, Aearo knew that the inhalation of such dust could cause serious, progressive lung disease. Nevertheless, Aearo specifically marketed the respirators as being safe and effective for use by coal miners.

54. Aearo should have warned that the type of respirators worn by Plaintiff were not appropriate for use in coal mining operations. Nothing prevented Aearo from taking such action.

55. Aearo is subject to a punitive damage award because it acted with gross fraud, malice, oppression or wanton, willful or reckless conduct towards the health and safety of the user of their respirators, here the Plaintiff. Further, Aearo did not recall its respirators at any time nor ever warn of the hidden defects.

56. The suppression of information and misrepresentations by Aearo was motivated by their desire to obtain an unjust economic advantage, including maximizing sales and profits from the sale of the products at the expense of the health of coal miners, including the Plaintiff.

57. The aforesaid actions of Aearo constitute malicious, willful, and wanton conduct and gross negligence and demonstrate a complete disregard and indifference to the safety of the Plaintiff. As a result, Plaintiff seeks punitive damages against Aearo.

**WHEREFORE,** Plaintiff prays for judgment against the Defendants, jointly and/or severally, as follows:

1. For an award of compensatory damages in excess of Seventy-Five Thousand Dollars ($75,000.00);

2. For pre-judgment and post-judgment interest on the above general and special damages;

3. For all other relief that Plaintiff may be entitled to at equity or at law.

4. For such further and other relief that this Court deems just and equitable.

**DEMAND FOR JURY TRIAL**

Plaintiff demands a trial by jury on all counts and issues so triable.

Dated: January 2, 2020   By: *Rhett A. McSweeney*
Rhett A. McSweeney, #269542
David M. Langevin, # 329563
Jonathan R. Mencel, # 390056
2116 Second Avenue South
Minneapolis, MN 55404
Telephone: (612) 746-4646
Facsimile:  (612) 454-2678
ram@westrikeback.com
dave@westrikeback.com
jon@westrikeback.com

*Attorneys for Plaintiff*

Johnny Givens, MSB No. 101561
GIVENS LAW FIRM, PLLC
240 Trace Colony Park Dr., Ste 100
Ridgeland, Mississippi 39157
Telephone: (601) 300-2009
Facsimile:  (800) 291-0847
johnny@givens-law.com

Porter Malouf, P.A.
Post Office Box 12768
Jackson, Mississippi 39236
Telephone: (601) 957-1173

*Pro hac vice pending*